IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SOTERO MONTEON,

    Plaintiff,                        No. CIV S-02-2017 GEB CMK

    vs.

MIKE KNOWLES, et al.,

    Defendants.                   FINDINGS AND RECOMMENDATIONS

                                /

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Before the court is defendants' motion for summary judgment, filed on March 15, 2005.[1]  This action is proceeding on plaintiff's amended complaint, filed March 19, 2003.  On April 5, 2005, plaintiff filed an opposition to defendants' motion for summary judgment.

        Plaintiff alleges that defendants Knowles and Knipp placed him in administrative segregation ("AdSeg") in retaliation for plaintiff's complaints against other staff.  Plaintiff also alleges that his due process rights were violated by his continued retention in AdSeg. (Am. Compl. p. 8.)

        Defendants assert that they are entitled to summary judgment because the plaintiff's placement in AdSeg was for protection of the plaintiff, prison staff, and other inmates, and to preserve the integrity of the investigation.  Defendants also assert that they are entitled to summary judgment on plaintiff's due process claims because plaintiff received all the process due to him

---

[1] The court's order filed on April 21, 2005, mistakenly stated that the plaintiff's motion for summary judgment was before the court. The order should have stated that it was the defendants' motion for summary judgment.

1

during his retention in AdSeg.

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the

fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On April 22, 2004, the court advised plaintiff of the requirements for opposing a

motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## ANALYSIS

I. Facts

   a. Undisputed Facts

Plaintiff was a California prisoner at Mule Creek State Prison ("MCSP") at all times relevant to this action. (Defs.' Undisputed Facts at 1.)

Defendant Knipp was a Correctional Lieutenant at MCSP at all times relevant to this action. Defendant Knowles was the Warden of MCSP at all times relevant to this action. (Id.)

On September 13, 2001, Officer Sanchez informed plaintiff that he was being moved out of the housing building. Plaintiff told Sergeant Medina that Officer Sanchez was giving plaintiff's cell to two Northern Hispanic inmates because she favored Northerners and that drug dealers in the building were paying inmates who work for Officer Sanchez to remove plaintiff from the building. (Defs.' Undisputed Facts at 2.)

On September 17, 2001, plaintiff was issued a CDC 115, Rules Violation Report ("RVR"), for being disrespectful to the prison staff. More specifically, the RVR was based on plaintiff's statements to Sergeant Medina about Officer Sanchez. On September 27, 2001, plaintiff appeared before the Senior Hearing Officer ("SHO"). The SHO reduced the charge and dismissed it. The SHO also documented the lesser charge on a CDC 128 A, Custodial Counseling Chrono. (Id.) Neither defendants Knipp or Knowles were involved in this incident. (Id.)

Subsequently, plaintiff wrote letters to defendant Knowles (Warden) stating that he had been informed that the prison staff was conspiring against him and that certain employees had disseminated information on the yard that plaintiff had provided confidential information. (Id.) Plaintiff sent numerous letters to defendant Knowles describing his belief that there was a mass

4

1  conspiracy against him by the Facility B correctional staff. Plaintiff alleged that staff members were
2  fabricating rule violation reports and conspiring to have him assaulted. (Id.)
3         Defendants contend that they placed the plaintiff in AdSeg pursuant to the California
4  Code of Regulations. Specifically, the California Code of Regulations requires that when an
5  inmate's presence in the general population presents an immediate threat to the safety of others or
6  the inmate, endangers institution security or jeopardizes the integrity of an investigation of an alleged
7  serious misconduct or criminal activity, the inmate shall be immediately transferred to AdSeg. See
8  Cal. Code Regs Tit. 15, § 3335(a).
9         While in AdSeg, plaintiff was allowed to spend approximately 15 hours a week in
10 the yard in addition to having law library access. He had access to a counselor and psychiatrist and
11 possessed a television in his cell. The plaintiff received three meals a day. (Id. at 8; Depo. 60-62.)
12     b. Disputed Facts
13        Defendants contend that in his letters, plaintiff stated that prison staff were labeling
14 him an informant, thereby placing his life in danger. Defendants also contend that plaintiff wrote
15 letters to defendant Knowles requesting that Knowles advise his staff to stop spreading rumors. (Id.
16 at 3.) Plaintiff disputes that these letters indicated that he believed that his life was in danger or that
17 he had concern for his safety. Plaintiff now asserts that he did not have concern for his own safety
18 because he was more than able to defend himself with his boxing and martial arts skills. (Opp'n at
19 1-2.)
20        Defendants contend that plaintiff alleged prison staff were fabricating RVRs and
21 conspiring to have him assaulted. Defendants argue that on October 19, 2001, defendant Knipp
22 interviewed plaintiff as part of an initial fact finding mission. (Defs.' Undisputed Facts at 3.)
23 Plaintiff contends that defendant Knipp did not conduct any fact finding, investigation, or interview
24 on October 19, 2001. Instead, plaintiff claims defendant Knipp simply declared "I am locking you
25 up in Ad-Seg per Knowles (warden) order" and escorted him to AdSeg. (Opp'n at 1-2.)
26        Defendants contend that Knipp's only involvement in this matter was his interview

of plaintiff on October 19, 2001, and during a subsequent placement of plaintiff in AdSeg. Defendants also contend that Knipp did not participate in the decision to retain plaintiff in AdSeg. (Defs.' Undisputed Facts at 4.) Plaintiff responds that both defendant Knowles and Knipp were responsible for his unlawful detention in AdSeg because they both had the authority to release him. Plaintiff contends that there was no reason to continue his detention in AdSeg for the first ten months because there was no evidence that his allegations were true. (Opp'n at 2.)

Defendants contend that the Institutional Classification Committee ("ICC") decided to retain the plaintiff in AdSeg pending completion of the investigation. Upon completion of the investigation, no information was found to substantiate plaintiff's allegations. However, the defendants claim the ICC then decided to retain the plaintiff in AdSeg until his transfer to another prison because his return to Facility B would jeopardize safety and security. The ICC also found that the plaintiff, while in AdSeg, was guilty of battery and mutual combat. (Defs.' Undisputed Facts at 5.) Defendants contend that plaintiff actively participated in all AdSeg placement hearings, stated that he understood the decisions rendered, and was advised of his appeal rights. (Id at 6.)

Plaintiff responds that the battery and mutual combat charges were fabricated and exaggerated. Of course this statement is problematic in itself. If they were fabricated, then they were not exaggerated, and even if they events were exaggerated, the underlying allegations of aggressive behavior appear documented. Plaintiff further contends that defendants are responsible for his disciplinary violations because they would not have occurred had the defendants not placed him in AdSeg, with inmates who have disciplinary problems. Plaintiff argues that after his initial placement in AdSeg, he refused to participate or attend ICC hearings because defendant Knowles would laugh and mock him. (Opp'n at 3.)

II. Retaliation

"A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and the retaliatory action does not

advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994)(citing Rizzo v. Dawson, 778 F.2d 524, 532 (9th Cir. 1985)); see also Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Plaintiff must also allege that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct. See Soranno's Gasco, Inc.v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). Finally, the prisoner plaintiff must allege direct or circumstantial evidence establishing a link between the exercise of constitutional rights and the alleged retaliatory action. Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).

In the present case plaintiff alleges that defendants Knipp and Knowles conspired against him because he complained about other prison staff. Specifically, plaintiff asserts that he wrote letters to defendant Knowles regarding rumors that members of the prison staff were going to retaliate against him. Plaintiff alleges that defendant Knipp subsequently informed plaintiff that he was placing him in AdSeg pursuant to defendant Knowles' order. (Am. Compl. 7-8.)

Significantly, the plaintiff's staff complaints were not against either Knowles or Knipp. Plaintiff's only allegations against defendants Knipp and Knowles relate to the fact that Knowles was the Warden who ordered his placement in AdSeg, and Knipp was the Lieutenant that physically placed him there. (Depo. 18:8-12.) Plaintiff fails to provide any evidence, direct or circumstantial, of defendants alleged intent to retaliate against him for his complaints against staff.

Next, defendants contend that they had a legitimate penological purpose for placing plaintiff in AdSeg, namely, the safety of the plaintiff, the prison staff, and other inmates. Defendants contend that plaintiff's letters regarding the prison staffs' alleged conspiracy to assault him and fabricate RVRs were serious enough to cause safety concerns. Defendants also argue that the California Code of Regulations requires that when an inmate's presence in the general population presents an immediate threat to the safety of others or the inmate, endangers institution security or jeopardizes the integrity of an investigation of an alleged serious misconduct or criminal activity, the inmate shall be immediately transferred to AdSeg. See Cal. Code Regs Tit. 15, § 3335(a).

In response, plaintiff disputes that he stated his life was in danger in his letters to defendant Knowles. However, the defendants do not assert that plaintiff told defendant Knowles his life was in danger, but only that the alleged conspiracy caused safety concerns.

Plaintiff then contends that he had no safety concerns because he could defend himself with his boxing and martial arts skills. Plaintiff argues that he wanted defendant Knowles to be aware of the conspiracy so that he would instruct his staff to defuse the situation, but more importantly as a warning that if the plaintiff did fight which resulted in injury, that he would not lose his job or be place in administrative segregation. By following this line of reasoning, Plaintiff then concludes that defendants motives were retaliatory.

Regardless of plaintiff's reasons for writing the letters, plaintiff does not dispute defendants' legitimate penological purpose. As a result, there is not a genuine issue of material fact in dispute that would preclude the grant of summary judgment. In light of the above, defendants are entitled summary judgment on plaintiff's retaliation claim.

III. Due Process

Plaintiff claims that he was denied due process when he was retained in AdSeg for 10 months. The Due Process clause itself does not create a liberty interests to be free from segregated housing. Toussaint v. McCarthy, 801 F.2d 1080, 1092 (9th Cir. 1986). In fact, a liberty interest is not even violated when an inmate is denied access to vocational, educational, recreational, and rehabilitative programs, or is given exercise restrictions, or confined to his or her cell for long periods of time. Id.

To prevail on his due process claim, plaintiff must demonstrate that he possessed a liberty or property interest protected by the United States Constitution or federal statutes and the he was deprived of that interest without due process. See Sandin v. Conner, 515 U.S. 472, 482 (1995). A liberty interest may be implicated in appropriate circumstances by either a federal or state statute or by the United States Constitution itself. Id. In Sandin, the United States Supreme Court found that state regulations can create a liberty interest only where a restraint imposes "atypical and

significant hardship on an inmate in relation to the ordinary incidents of prison life." Id. After Sandin, a violation of the California Code of Regulations, without more, does not constitute a due process violation.

Plaintiff does not allege that his time in AdSeg was atypical or posed a significant hardship. Although, plaintiff was in AdSeg for 10 months, it is undisputed that he (1) was allowed to spend approximately 15 hours a week in the yard, (2) had law library access; (3) had access to a counselor and psychiatrist, (4) possessed a television in his cell, and (5) received three meals a day. The simple fact that he was in Adseg for 10 months is not sufficient to establish a constitutional violation.

Even assuming arguendo, that retention in AdSeg under these circumstances implicates a liberty interest under Sandin, it appears from the allegations in the complaint that plaintiff was afforded all the process that was due. An inmate may be placed and/or retained in administrative segregation if the inmate's presence in the general population "presents an immediate threat to the safety of the inmate or others [or] endangers institution security." 15 C.C.R. § 3335(a); see also Toussaint v. McCarthy, 801 F.2d 1080, 1101-02 (1986). When an initial decision is made to place an inmate in administrative segregation, due process requires only that prison officials (1) hold an informal nonadversarial hearing within a reasonable time after the prisoner is segregated; (2) inform the prisoner of the charges against the prisoner or their reasons for considering segregation; and (3) allow the prisoner to present his views. Id. at 1100.

Here, defendants contend that plaintiff appeared before the Institutional Classification Committee for an initial AdSeg placement review. Defendants argue further that the plaintiff actively participated in the hearing process, stated that he understood the decision rendered, and was advised of his right to appeal. Plaintiff responds that the hearings were a "sham" because once the investigation showed that there was no evidence to substantiate plaintiff's allegations he should have been placed back in the B yard. Plaintiff further contends that defendant Knowles ridiculed him during this period of time and as a result he later refused to participate or attend hearings.

However, plaintiff fails to dispute that he was present at the initial AdSeg placement hearing, informed of the reasons for segregation, and not restricted in presenting his position and views. Therefore, there is no genuine issue of material fact in dispute and plaintiff was afforded the process that was due.

Plaintiff also alleges that his due process rights were violated because the disciplinary charges were false. A procedural due process claim arising from the filing of a false disciplinary report is cognizable only if the Wolff protections were not afforded to the inmate at a disciplinary hearing. See Freeman v. Rideout, 808 F.2d 949 (2nd Cir. 1986) (inmates procedural due process rights are not violated by false charges if inmate is granted a hearing on the charges and an opportunity to rebut them), cert. denied, 485 U.S. 982 (1988); see also Wolff v. McDonnell, 418 U.S. 539 (1974). The protections under Wolff include (1) written notice of the charges at least twenty-four hours prior to the hearing; (2) the right to appear in person before an impartial hearing body; (3) the right to call witnesses and to present documentary evidence; and (4) a written statement of reasons for the disciplinary action taken. Black v. Lane, 22 F.3d 1395, 1402 (citing Cain v. Lane, 857 F.2d 1139, 1145 (7th Cir. 1988) in turn citing Wolff).

In the present case, ten months after his initial placement in AdSeg, plaintiff received two RVRs: one for battery on an inmate and one for mutual combat. The ICC considered the plaintiff's RVRs in making its December 19, 2002 decision to retain the plaintiff in AdSeg. Plaintiff does not dispute that he was given the required Wolff protections.[2] Thus, defendants are entitled to summary judgment as to plaintiff's due process claims as well.

IV. Qualified Immunity

"Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. at 200 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). It provides "an immunity from suit rather than a mere defense to liability'...." Id. (quoting Mitchell,

---

[2] It should also be noted that the plaintiff does not dispute that defendant Knipp did not participate in the decision to retain him in AdSeg.

472 U.S. at 526).

The Supreme Court has held that the threshold question in determining whether qualified immunity applies is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201. If there would be no constitutional violation even if the allegations were taken as true, then "there is no necessity for further inquiries concerning qualified immunity." Id. If a violation could be made out of the parties' submissions a court evaluating the qualified immunity claim should proceed to the next step: "whether the right was clearly established." Id. If the right was clearly established at the time of the alleged incident, the court must ask "under that law, could a reasonable state official have believed his conduct was lawful?" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995). This standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Id. (quoting Hunter v. Byrant, 502 U.S. 224, 229 (1991)(internal quotations omitted)).

For a constitutional right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of the pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987)(citation omitted). See also Hope v. Pelzer, 122 S.Ct. At 2515; Saucier, 533 U.S. at 202; Wilson v. Layne, 526 U.S. 603, 615 (199) ("[A]s we explained in Anderson, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.") This level of specificity is required because "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202.

As previously discussed in section II above, we find no constitutional violation. Both

1  defendants acted out of concern for the safety of the plaintiff, other inmates, and prison staff. The
2  defendants also acted in accord with the California Code of Regulations. See Cal. Code Regs. Tit.
3  15, § 3335(a). Thus, this ends the qualified immunity analysis.
4      IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment,
5  filed March 15, 2005, be GRANTED and this action be closed.
6      These findings and recommendations will be submitted to the United States District
7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty days
8  after being served with these findings and recommendations, any party may file written objections
9  with the court and serve a copy on all parties. Such a document should be captioned "Objections to
10 Magistrate Judge's Finding and Recommendations." Any reply to the objections shall be served and
11 filed within ten days after service of the objections. The parties are advised that failure to file
12 objections within the specified time may waive the right to appeal the District Court's order.
13 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
14 DATED:  May 11, 2005.

                                                **CRAIG M. KELLISON**
                                                UNITED STATES MAGISTRATE JUDGE